UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

[Filed Electronically]

| | |
|---|---|
| **JEFFERY MESSAMORE, Administrator** ) <br> of the Estate of Jordan D. Kirkwood, ) <br> deceased, and NEXT FRIENDS of his ) <br> minor children N.J.K. and I.L.R.K, ) <br> ) <br>       **PLAINTIFFS** ) <br> ) <br> v. ) <br> ) <br> **HOPKINS COUNTY, KENTUCKY** ) <br> Serve:    Jack Whitfield, Jr. ) <br>           Hopkins County Judge Executive ) <br>           Hopkins County Government Center ) <br>           56 North Main Street ) <br>           Madisonville, KY 42431 ) <br> ) <br> **-and-** ) <br> ) <br> **HOPKINS COUNTY FISCAL COURT** ) <br> Serve:    Jack Whitfield, Jr. ) <br>           Hopkins County Judge Executive ) <br>           Hopkins County Government Center ) <br>           56 North Main Street ) <br>           Madisonville, KY 42431 ) <br> ) <br> **-and-** ) <br> ) <br> **MICHAEL LEWIS, Individually and in his** ) <br> **Official Capacity as Hopkins County Jailer** ) <br> Serve:    Jailer Michael Lewis ) <br>           Hopkins County Jail ) <br>           2250 Laffoon Trail ) <br>           Madisonville, KY 42431 ) <br> ) <br> **-and-** ) <br> ) <br> **SAMANTHA JONES, Individually and in her** ) <br> **Official Capacity as Deputy of the Hopkins** ) <br> **County Jail** ) | CIVIL ACTION NO.: 4:19-CV-36-JHM |

|  |  |  |
|---|---|---|
| Serve: | Samantha Jones | ) |
|  | Hopkins County Jail | ) |
|  | 2250 Laffoon Trail | ) |
|  | Madisonville, KY 42431 | ) |
|  |  | ) |
| **-and-** |  | ) |
|  |  | ) |
| **ADVANCED CORRECTIONAL** |  | ) |
| **HEALTCARE, INC.** |  | ) |
| 3922 W. Baring Trace |  | ) |
| Peoria, IL 61615-2500 |  | ) |
| Serve: | CT Corporation System | ) |
|  | 306 W. Main St. | ) |
|  | Suite 512 | ) |
|  | Frankfort, KY 40601 | ) |
|  |  | ) |
| **-and-** |  | ) |
|  |  | ) |
| **CHRISTINA EUBANKS, Individually and** |  | ) |
| **Official Capacity** |  | ) |
| Serve: | Christina Eubanks | ) |
|  | Hopkins County Jail | ) |
|  | 2250 Laffoon Trail | ) |
|  | Madisonville, KY 42431 | ) |
|  |  | ) |
| **-and-** |  | ) |
|  |  | ) |
| UNKNOWN DEFENDANTS, |  | ) |
|  |  | ) |
|  | **DEFENDANTS.** | ) |

# COMPLAINT

## I. Introduction

1. Jeffery Messamore, Administrator of the Estate of his brother, Jordan D. Kirkwood, deceased, and as Next Friend of Mr. Kirkwood's two (2) minor children, N.J.K. and I.L.R.K, complains of the egregious and unjustifiable treatment of Mr. Kirkwood by Defendants named in the caption above. As more specifically set forth below, Mr. Kirkwood, after his incarceration at the Hopkins County Jail (the "Jail"), was subjected to Defendants' deliberate indifference to his

obviously serious medical needs and, as a consequence, died. It is the purpose of this action to recover the actual damages Mr. Kirkwood, his estate, and his minor children sustained as a result of Defendants' conduct, and punitive damages to punish Defendants' conduct and forever deter its repetition.

## II.  Jurisdiction and Venue

2. Plaintiffs seek damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for gross and unconscionable violations of the rights, privileges and immunities guaranteed Mr. Kirkwood by the Eighth, Tenth and Fourteenth Amendments to the Constitution of the United States. Accordingly, this Court has jurisdiction of this case pursuant to the provisions of 38 U.S.C. §§ 1331 and 1343. Plaintiffs also seek damages for negligence, gross negligence, negligence per se, outrageous conduct, negligent, hiring, retention, training, wrongful death, and emergency care. Authority to hear the pendent state claims is conferred by the Court's supplemental jurisdiction under 28 U.S.C. § 1367. Hopkins County, Kentucky is the location of all acts pertinent to this suit, and venue is therefore proper in this Court.

## III. Parties

3. Plaintiff resides in Hopkins County, Kentucky.  Plaintiff was appointed Administrator of Mr. Kirkwood's estate by Order of the Hopkins District Court on March 19, 2019.  Jordan Kirkwood was a resident of Hopkins County, Kentucky at the time of his death on March 23, 2018.

4. Defendant Hopkins County, Kentucky is a governmental entity responsible for the incarceration of prisoners arrested in Hopkins County and operated and managed the Hopkins County Jail, and was  also responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the

officers, employees and independent contractors at the Jail, including medical staff and/or contracted medical staff at the Hopkins County Jail.

5. Defendant Hopkins County Fiscal Court is a governmental entity responsible for the incarceration of prisoners arrested in Hopkins County and providing and maintaining a safe, secure, and clean jail for those incarcerated. The Hopkins County Fiscal Court established or failed to establish policies and procedures for the screening, hiring, employment, retention, supervision, training, and conduct of the Hopkins County Jailer, and employees, officers, deputies, and any medical staff and/or contracted medical staff at the Hopkins County Jail.

6. Defendant Michael Lewis ("Jailer Lewis") was at all times mentioned herein acting individually and/or in his official capacity as Jailer of Hopkins County, Kentucky. Jailer Lewis was responsible for the incarceration of prisoners arrested in Hopkins County, operated and managed the Hopkins County Jail, and established or failed to establish policies and procedures either formally or by custom for the screening, hiring, employment, supervision, training, and conduct of the employees, officers, deputies, and any medical staff and/or contracted medical staff at the Hopkins County Jail.

7. Defendant Samantha Jones ("Deputy Jones") at all times mentioned herein was acting in her individual and/or official capacity as an officer and employee or agent of Defendants, Hopkins County, Kentucky, Hopkins County Fiscal Court, and/or Michael Lewis while working at the Hopkins County Jail.

8. Defendant Advanced Correctional Healthcare, Inc. ("ACH") is and was at all times stated herein a corporation organized and existing under the laws of Illinois and authorized to conduct business in the Commonwealth of Kentucky, with its principal place of business located at 3922 W. Baring Trace, Peoria, IL 61615, and acted through its agents, servants, and employees

to provide medical services and medical personnel to Hopkins County, Kentucky, Hopkins County Fiscal Court, and/or the Hopkins County Jail for prisoners arrested in Hopkins County. At all times stated herein, ACH employed, was responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision, and conduct of the employees, doctors, nurses and any other medical staff at the Hopkins County Jail.

9. Defendant Christina Eubanks ("Eubanks") is and was at all times stated herein, a resident of Hopkins County, Kentucky, and was acting in her individual capacity and/or official capacity as an employee or agent of Defendants, Hopkins County, Hopkins County Fiscal Court, ACH, and/or Jailer Lewis and was working at the Hopkins County Jail, and personally participated in the mistreatment of Mr. Kirkwood described below. At all times stated herein, Eubanks operated in the capacity as the Medical Authority for the Jail.

## IV. Nature of Defendants' Conduct

10. At all times relevant herein, several Defendants, and each of them, separately and in concert, acted under color of state law. At all times relevant herein, all Defendants, and each of them, separately and in concert, engaged in the illegal and unconstitutional conduct described herein and deprived Jordan Kirkwood of the rights, privileges, and immunities secured to him by the Eighth Amendment to the United States Constitution, and the Constitution and laws of the Commonwealth of Kentucky.

11. Defendants, individually and in conspiracy with one another, engaged in the conduct described below under color of the law of the Commonwealth of Kentucky and Hopkins County. The individual Defendants named above knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the conduct described below. The offenses described below resulted from the failure of the supervisory individuals and entities

identified above to employ qualified persons for positions of importance, and/or to properly or conscientiously train and supervise the conduct of such persons after their employment and/or to promulgate appropriate operating policies and procedures either formally or by custom to protect the constitutional rights of Mr. Kirkwood. Defendants' conduct was intentional and grossly negligent, indicated active malice toward Mr. Kirkwood and a total, deliberate and reckless disregard for and indifference to his life and his constitutional and common law rights, and justifies an award of punitive damages in addition to the actual damages he, his estate and his minor children are entitled to recover.

## V. Facts and Allegations

12. Plaintiffs reallege and incorporate each and every allegation set forth in Paragraphs 1 through 11 above, as if fully restated herein.

13. Mr. Kirkwood, a 25-year old resident of Hopkins County, Kentucky was admitted to the Jail on March 6, 2018 after his arrest on an outstanding warrant and drug possession charges.

14. Mr. Kirkwood was previously admitted to the Hopkins County Jail in 2016 and while in Jail custody, on July 15, 2016, Mr. Kirkwood collapsed in cardiac arrest. A stat response was initiated and Mr. Kirkwood was defibrillated four (4) to five (5) times, given four (4) rounds of epinephrine, and two (2) doses of amiodarone and the return of spontaneous circulation occurred after twenty (20) to twenty-five (25) minutes. Mr. Kirkwood was then taken by EMS to the Madisonville Emergency Room and later transferred to the University of Louisville Hospital.

15. Mr. Kirkwood required medical monitoring and medically-indicated pharmaceuticals following his heart attack.

16. When Mr. Kirkwood was admitted to the Jail on March 6, 2018, he was screened in the Medical Department by and through ACH. Mr. Kirkwood disclosed his medical history,

which included the cardiac event that occurred at the Jail on July 15, 2016 and the medically-indicated pharmaceuticals he was prescribed for his heart condition.

17.     Defendants Hopkins County, ACH, Jailer Lewis, and Eubanks were aware Mr. Kirkwood's history of cardiac arrest by virtue of his previous time at the Jail and need for medical intervention. Defendant Deputy Jones became aware of Mr. Kirkwood's heart condition history in conversation with other Deputies and Mr. Kirkwood himself.

18.     On or around March 21, 2018, Mr. Kirkwood completed a paper "Sick Call Request" form seeking medical attention because he was having chest pains. Mr. Kirkwood submitted it to a Deputy during hourly rounds per Hopkins County Jail Inmate Rules and Regulations. Mr. Kirkwood was not provided medical attention, despite the fact that chest pain symptoms in an individual with a document history of cardiac arrest would objectively necessitate medical attention. Mr. Kirkwood's "Sick Call Request" was denied by Hopkins County, ACH, and/or Eubanks.

19.     Between March 21, 2018 and March 23, 2018, Mr. Kirkwood submitted multiple "Sick Call Request" forms and each time was denied medical attention.

20.     The morning of March 23, 2018, Mr. Kirkwood submitted a "Sick Call Request" stating that his chest hurt, he was having difficulty breathing, and needed his medically-indicated pharmaceuticals for his heart condition. Mr. Kirkwood asked the Deputy on the morning shift if he could have his medication for his heart condition and the Deputy immediately responded "No".

21.     Mr. Kirkwood told one of his fellow inmates that he was scared to submit "Sick Call Request" forms because he knew the more forms he submitted, the more annoyed the Medical Department (Hopkins County, ACH, and Eubanks) would become with him, and would continue to refuse to see him in retaliation for his multiple submissions.

22. Upon information and belief, Eubanks approached Mr. Kirkwood on March 23, 2018 and in refusing to grant his request for medical attention stated "he ain't nothing but a troublemaker and he's just trying to get out of the cell" to Deputy Jones.

23. As Friday, March 23, 2018 went on, Mr. Kirkwood's condition continued to deteriorate.  Mr. Kirkwood was in visible distress prior to dinner service and exhibited unusual behaviors that clearly indicated he was having chest pains.  Mr. Kirkwood repeatedly attempted to stretch his chest cavity and his arms in hopes of relieving pressure in his chest.  Around 6:00 p.m. Deputy Jones performed a walk through of the area Mr. Kirkwood occupied.  The Hopkins County Jail Policies concerning "Security Control" (Section 6) developed by Hopkins County, Hopkins County Fiscal Court, and /or Jailer Lewis, require a deputy during a surveillance tour to observe inmates' behavior and appearance for unusual situations, such as an inmate needing medical attention.  Deputy Jones failed to identify Mr. Kirkwood's obvious signs of physical distress.

24. Around 6:40 p.m. Mr. Kirkwood in great physical discomfort and with no option for medical care went to take a shower in hopes of finding some relief.  While in the shower area, Mr. Kirkwood went into cardiac arrest and collapsed.

25. According to 501 KAR 7:060, Section 2(2), "[t]here shall be at least three (3) documented prisoner counts every twenty-four (24) hours during which each prisoner's physical presence, by show of skin or by movement, shall be observed or his location accounted for.  At least one (1) count shall be conducted per shift."  As set forth in the Hopkins County Jail Policies concerning "Security Control" (Section 6) developed by Hopkins County, Hopkins County Fiscal Court, and /or Jailer Lewis, a standing headcount is to be conducted at breakfast, lunch, and at dinner.  Accordingly, Deputy Jones was required to perform a headcount at dinner on March 23, 2019 and visually observe each inmate, including Mr. Kirkwood's physical presence.

26. At approximately 6:40 p.m., the same time Mr. Kirkwood stepped into the shower, Deputy Jones, performed meal service in the pod of less than twenty (20) inmates and conducted the headcount and counted Mr. Kirkwood as present. Deputy Jones asked where Mr. Kirkwood was and was told he was in the shower. Deputy Jones assumed Mr. Kirkwood was fine, did not go back to the shower area to confirm his physical presence, or even request a verbal response from Mr. Kirkwood. Deputy Jones set Mr. Kirkwood's dinner tray on a counter and left the pod.

27. At approximately 7:05 p.m., inmates began banging on the door to the pod and shouting to get Jail staff's attention as Mr. Kirkwood was on the floor of the shower. Jail staff members entered the shower area and found Mr. Kirkwood unresponsive on the floor and began CPR. After EMTs arrived, there were no signs of life and a white sheet was placed over Mr. Kirkwood's body. Mr. Kirkwood was transported by ambulance to Baptist Health Madisonville and was pronounced dead at 7:52 p.m.

28. At no point did any Defendant attempt to contact Mr. Kirkwood's next of kin to inform them of his collapse, transport to Baptist Health Madisonville, or is death.

29. Upon information and belief, during Mr. Kirkwood's incarceration, Defendants Hopkins County, Hopkins County Fiscal Court, ACH, Jailer Lewis, and/or Eubanks repeatedly denied Mr. Kirkwood his medically-indicated pharmaceuticals for his heart condition.

30. Upon information and belief, the Jail has an emergency medical services policy with terms that embraced Mr. Kirkwood's obviously serious medical condition, but which were ignored by Jail employees and ACH medical professionals.

31. Upon information and belief -- and given the severity of Mr. Kirkwood's condition which can be observed first-hand in the video footage captured at the Jail on March 23, 2018 – numerous verbal and written complaints made by Mr. Kirkwood about his physical condition and

need for medical attention and medically-indicated pharmaceuticals, and complaints made by his cellmates, and deputy jailers to Defendants were either ignored entirely or were shrugged off, incorrectly, assuming it to be a ploy to get out of his cell.

32. ACH is an Illinois-based for-profit jail healthcare company. It works in more than 250 jails spread over almost 20 states. In order to maximize profit, it minimizes expense by staffing jails, including the Hopkins County Jail, with license practical nursing coverage ("LPNs") and/or an RN who are supervised by an APRN that visits the Jail once per week. ACH failed to establish and/or adhere to policies and procedures for screening, hiring, employment, employment, retention, supervision, training, and conduct of the employees, agents, contractors, and personnel it staffed at the Hopkins County Jail. ACH also failed to establish policies and procedures and train its staff to recognize signs and symptoms of inmates requiring medical attention.

33. On or around July 8, 2015, Hopkins County and former Hopkins County Jailer entered into an Agreement for the Provision of Inmate Health Services (the "Agreement") with ACH beginning July 1, 2015 and continuing through June 30, 2018. Exhibit A. According to Article 1.23.3 of the Agreement concerning staffing, ACH agreed to provide, and Hopkins County and the former Hopkins County Jailer accepted on-site licensed practical nurse coverage on a schedule approved by the Jailer. At the time of Mr. Kirkwood's death, the nursing coverage schedule was approved by Jailer Lewis as Jailer Lewis assumed his position on July 1, 2017.

34. According to the Hopkins County Jail Inmate Rules and Regulations medical procedures policy developed by Hopkins County, Hopkins County Fiscal Court, and/or Jailer Lewis, deputies were responsible for collecting "Sick Call Request" and making a medical determination as to whether the complaint required immediate attention, thought they are not licensed healthcare providers. If a deputy determined a complaint needed immediate medical

attention, the complaint would be given to the medical department where an LPN would evaluate the medical condition to determine if further evaluation is needed by the Jail doctor.

35. LPNs were relied upon to conduct medical assessment, which is beyond the scope of their practice as set forth in KRS 314.011(10). Accordingly, Hopkins County, Hopkins County Fiscal Court, and/or Jailer Lewis required unqualified staff to serve as gatekeepers to medical care, which resulted in the death of Mr. Kirkwood, as there was not a qualified healthcare provider available to evaluate his medical condition and render proper care.

36. The Agreement entered into by and between Hopkins County, the Jailer, and ACH, also addressed the provision of pharmaceuticals. According to Article 1.20, "ACH will provide all medically-indicated pharmaceuticals. The COUNTY agrees to allow home medications in the FACILITY when they are able to be properly verified. POOL money will pay for all medically indicated pharmaceuticals." Exhibit A. The "COUNTY will have a POOL of eighty thousand dollars ($80,000.00) to be used every twelve (12) months." Article 1.21. Outpatient care for inmates, hospitalization, and prescriptions are expenses that would be paid for with POOL money. Article 1.21.1. The Jail had an average daily census around 400 inmates and $80,000 was the total budgeted amount for their healthcare for a twelve (12) month period.

37. After a twelve (12) month term, "[a]ny monies remining in the POOL after receipt of invoices will be shared with the COUNTY at a rate of fifty percent (50%) to the COUNTY / fifty percent (50%) to ACH." Exhibit A. Article 1.21.2. Therefore, both ACH and Hopkins County were incentivized to minimize inmate medical care and restrict the provision of medically-indicated pharmaceuticals, which would be paid for with POOL money, to increase the pool money that would be shared between ACH and Hopkins County after a twelve (12) month term.

38. At all relevant times, Eubanks, who was not a licensed healthcare professional held herself out as the Director of the Jail's Medical Department, oversaw the nursing staff, and reviewed "Sick Call Requests", among other duties she was not lawfully authorized to perform. Hopkins County, Jailer Lewis, and ACH condoned, supported, and endorsed Eubank's function, which was in violation of KRS 314.031(1).

39. At all relevant times, Eubanks engaged in a pattern and practice of denying "Sick Call Requests" if she believed it would be costly and reduce pool money. If an inmate submitted multiple "Sick Call Requests", Eubanks routinely pushed the requests to the bottom of the list as a punishment for seeking medical care. Eubank's pattern and practice was well-known within the Jail, and it was condoned, supported, and endorsed by Hopkins County, Jailer Lewis, and ACH.

40. Hopkins County used a co-pay system for inmate medical requests. As set forth in the Hopkins County Jail Inmate Rules and Regulations, Medical Procedures, Section 7. Processing Fee, copays were assessed as follows: Nurse Visit $30.00, Physician Visit $50.00, Dentist Visit $50.00, Prescription set up $15.00, In House X-Ray's $50.00, Laboratory Analysis $5.00, Out of Jail Transport $50.00 per occurrence. Exhibit B. Upon information and belief, the co-pay fees were in effect prior to 2018. The Jail's co-pay fees were unconstitutional as the excessively high fees prevented inmates, including Mr. Kirkwood from receiving adequate health care because of his inability to pay. The Jail's co-pay fees were approximately eight (8) times higher than fees charged by the Louisville Metro Department of Corrections between 2013 and 2018[1]. During this time, the Louisville Metro Department of Corrections charged a co-payment of $4.00 for a Nurse Visit fee and $6.00 for a Physician Visit.

---

[1] https://louisvilleky.gov/sites/default/files/corrections/handbooks/inmate_handbook_4-2013.pdf ;
https://louisvilleky.gov/sites/default/files/corrections/handbooks/inmate_handbook_10-2018_.pdf .

41. Mr. Kirkwood was denied his medically-indicated pharmaceuticals and access to medical care by Hopkins County, ACH, and/or Eubanks because he had insufficient funds in his inmate account to pay the Jail's co-pays. This denial of medical care was in violation of KRS 441.265(5), which provides that "no prisoner confined in the jail shall be denied any necessary medical care because of inability to pay."

42. During Mr. Kirkwood's incarceration at the Hopkins County Jail, Jailer Lewis's time and attention was not focused on the Jail, but rather the May 2018 primary election in which he was running for Jailer. Jailer Lewis decision-making process during this time was primarily motivated in relation to how it would impact his campaign in the primary election. Jailer Lewis directed Jail staff not to take disciplinary action for violations of Jail policy that posed a danger to Jail staff, and inmates safety and wellbeing. Jail staff were prohibited from disciplining deputies whose family members were influential in the community for fear of the negative repercussions on his campaign.

43. After Mr. Kirkwood's death, Jail staff requested that Jailer Lewis terminate or otherwise discipline Deputy Jones, who failed to account for Mr. Kirkwood's physical wellbeing and presence, as required by law and Jail policy, at the very time Mr. Kirkwood collapsed and died. Jailer Lewis ordered that Deputy Jones would not be terminated or disciplined because of the potential impact on his campaign. After Mr. Kirkwood died, Deputy Jones continued to fail to physically account for each inmate's wellbeing during legally required head counts. Jail staff renewed requests to discipline Deputy Jones and Jailer Lewis continued to prohibit Jail discipline from being imposed against Deputy Jones until after the May 2018 primary election.

44. Upon information and belief, prior to Mr. Kirkwood's death, Jailer Lewis unsuccessfully petitioned a Hopkins County Judge to transfer Mr. Kirkwood to a different facility

because Jailer Lewis believed Mr. Kirkwood posed a liability to the Jail because of his pre-existing heart condition, which would be costly for the Jail to manage.

## VI. CAUSES OF ACTION

### COUNT I – VIOLATION OF 42 USC § 1983 – DELIBERATE INDIFFERENCE (8TH, 10TH, AND 14TH AMENDMENDTS OF US CONSTITUTION)

45. Plaintiffs reallege and incorporate each and every allegation set forth in Paragraphs 1 through 44 above, as if fully restated herein.

46. Defendants' conduct was intentional, reckless, deliberate, wanton and/or malicious, and was indicative of their total, deliberate and reckless disregard of and indifference to Mr. Kirkwood's life as well as his rights and the risk of harm to his life occasioned by such conduct.

47. Plaintiff believes and, after reasonable discovery, will show that Mr. Kirkwood's treatment by Defendants was not unusual, but was part of a continuing policy, pattern, custom and/or practice of Defendants of willfully and deliberately ignoring the medical needs of inmates of the Jail and denying access to medical personnel. Such conduct is the result of customs and practices of the Hopkins County, Hopkins County Fiscal Court, ACH and each of the individual Defendants named herein, either written or unwritten, that are systematically applied to all persons who exhibit the symptoms of obviously serious medical conditions while incarcerated at the Jail. Such practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate and unreasonable disregard for and indifference to the lives and constitutional and common law rights of inmates at the Jail, including Mr. Kirkwood, and the wholesale violations of those rights likely to result from the regular and systematic pursuit of such practices.

48. As a result of the foregoing, Mr. Kirkwood, through Defendants' deliberate indifference and negligent and grossly negligent -- if not reckless, intentional and/or malicious -- conduct, was subjected to cruel and unusual punishment and ultimately deprived of his life without

due process of law in violation of the Eighth, Tenth and Fourteenth Amendments of the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

49. As a direct result of Defendants' conduct Mr. Kirkwood, his Estate and minor children, suffered a distinct and actual injury to his rights.

### COUNT II - Negligence

50. Plaintiffs reallege and incorporate each and every allegation set forth in Paragraphs 1 through 49 above, as if fully restated herein.

51. The above negligence, gross negligence, and intentional, wanton, and with reckless disregard, acts of the Defendants, and each of them, resulted in the death of Mr. Kirkwood. Further, in the case of the Defendants responsible for authorizing and providing Mr. Kirkwood's medical care, including ACH, and its employees, nurses and doctors, failed to meet the standard of care applicable to their professions.

### COUNT III – Negligence per se

52. Plaintiffs reallege and incorporate each and every allegation set forth in Paragraphs 1 through 51 above, as if fully restated herein.

53. The above negligence, gross negligence, and intentional, wanton, and with reckless disregard, acts of the Defendants, and each of them, were in violation of KRS 441.265(5) as Mr. Kirkwood was denied necessary medical care because of his inability to pay. Such denial of medical care resulted in his death.

### COUNT IV – Negligence per se

54. Plaintiffs reallege and incorporate each and every allegation set forth in Paragraphs 1 through 53 above, as if fully restated herein.

55. The conduct of Defendant Eubanks in engaging in the unlicensed practice of nursing prohibited under KRS 314.031(1) by making a medical determination that Mr. Kirkwood did not require medical attention he requested on multiple occasions prior to his death.

56. Mr. Kirkwood and Plaintiffs were damaged by Defendant Eubanks' conduct as she was not licensed nor qualified to make a determination regarding Mr. Kirkwood's medical care and Mr. Kirkwood died as a result.

## COUNT V - Outrage

57. Plaintiffs reallege and incorporate each and every allegation set forth in Paragraphs 1 through 56 above, as if fully restated herein.

58. Defendants Eubanks and ACH's conduct in intentionally or recklessly denying medical attention to Mr. Kirkwood after his repeated requests for medical attention and to be provided his medically-indicated pharmaceuticals for his heart condition was so beyond the bounds of human decency and morality that it exemplified the tort of outrage.

59. Defendants Eubanks and ACH's intentional or reckless denial of medical attention and medically-indicated pharmaceuticals requested by Mr. Kirkwood resulted in extreme emotional distress to Mr. Kirkwood. Mr. Kirkwood was abundantly aware his physical condition was deteriorating and was left to suffer knowing that his condition would further deteriorate as the gatekeepers to medical care intentionally or recklessly denied him necessary medical care.

## COUNT VI – Negligent Hiring, Retention, and Training

60. Plaintiffs reallege and incorporate each and every allegation set forth in Paragraphs 1 through 59 above, as if fully restated herein.

61. Defendant ACH was negligent in its hiring of, retention of, and failure to adequately train Defendant Eubanks. Defendant Eubanks was permitted by ACH to routinely engage in the

unlawful practice of nursing prohibited under KRS 314.031(1) in assessing whether an inmate would receive medical care. Defendant Eubanks unlawfully engaged in the practice of nursing in determining Mr. Kirkwood did not need medical attention.

62. Defendant ACH was negligent in its failure to create, enact, and enforce adequate policies, procedures, and guidelines which would have protected Mr. Kirkwood from the harm he suffered.

63. Each of the omissions and commissions described above, and all of them, were a substantial factor in bringing about the injury to and death of Mr. Kirkwood.

### COUNT VII – Wrongful Death

64. Plaintiffs reallege and incorporate each and every allegation set forth in Paragraphs 1 through 63 above, as if fully restated herein.

65. This is a wrongful death action for which Mr. Kirkwood, his estate and his minor children are entitled to recover damages pursuant to KRS 411.130.

### COUNT VIII – Emergency Care

66. Plaintiffs reallege and incorporate each and every allegation set forth in Paragraphs 1 through 65 above, as if fully restated herein.

67. Defendants individually and collectively violated 501 KAR 3:090(21) in failing to provide emergency care to Mr. Kirkwood.

68. Each of the acts and omissions described above, and all of them collectively, was in a substantial factor in bringing about the injury and death of Mr. Kirkwood.

### Damages

69. Plaintiffs reallege and incorporate each and every allegation set forth in Paragraphs 1 through 68 above, as if fully restated herein.

70. As a direct and proximate result of the negligence stated hereinabove, Mr. Kirkwood endured physical pain, mental anguish, and emotional distress to his damage.

71. Mr. Kirkwood's death was unnecessary and preventable, and his estate is therefore entitled to recover the income and earnings he would have enjoyed had he lived. Mr. Kirkwood also experienced wanton and unnecessary mental and physical pain and suffering as a result of Defendants' conduct, for which his estate is entitled to recover damages.

72. Mr. Kirkwood's minor children are all entitled to recover for the loss of his love, society, support and companionship.

73. Plaintiffs are entitled to recover all expenses incurred in the funeral and cremation of Mr. Kirkwood and Defendants should be required to pay all the expenses incurred in the futile effort to save his life pursuant to the duties imposed by KRS 441.045(3).

74. Defendants' violations of Mr. Kirkwood's constitutional and common law rights were cruel, willful, malicious, or negligent (gross) and evidenced a total and reckless disregard for his life and those rights, entitling Plaintiffs to recover punitive damages from Defendants in order to deter such conduct in the future.

WHEREFORE, Plaintiffs demand the following relief:

(a) Judgment against each of the Defendants, jointly and severally;

(b) Trial by jury;

(c) Damages for Mr. Kirkwood's lost future income;

(d) Damages for Mr. Kirkwood's mental, emotional, and physical pain and suffering;

(e) Damages for Mr. Kirkwood's children's loss of his love, society, support and companionship;

(f) Plaintiffs' expenses incurred in the funeral and cremation of Mr. Kirkwood;

(g) Punitive damages;

(h) Plaintiffs' attorneys' fees, costs and expenses expended herein;

(i) Pre- and post-judgment interest on all sums awarded; and

(j) All other relief to which Plaintiffs, Mr. Kirkwood's estate, and his minor children may reasonably be entitled under law or in equity.

Respectfully submitted,

/s/ Courtney L. Graham\_\_\_\_\_
Courtney L. Graham
Randall S. Strause
STRAUSE LAW GROUP, PLLC
804 Stone Creek Pkwy., Ste. One
Louisville, KY 40223
Telephone: (502) 426-1661
Fax: (502) 426-6772
Email: cgraham@strauselawgroup.com
       rstrause@strauselawgroup.com


/s/ Ryan Russell\_\_\_\_\_
Ryan Russell
Alex R. White
ALEX R. WHITE, PLLC
908 Minoma Avenue
Louisville, KY 40217
Office: 502.882.7552
Fax:  502.585.3559
Email: ryan@arwhitelaw.com
       alex@arwhitelaw.com